Spring Term
1839.

McNairy et al.
vs
Bishop et al.

COVENANT.

# McNairy *et al: vs.* Bishop *et al.*

[M. Owsley and Mr. Turner for appellants: Messrs. Morehead and Brown and Mr. Hanson for appellees.]

FROM THE CIRCUIT COURT FOR BATH COUNTY.

May 8,

Chief Justice ROBERTSON delivered the opinion of the Court.

Upon a contract for a sale of hogs, made in Dec. the vendors covenanted to deliver 600 between the 15th and 20th of Oct. then next, in such pens as they should select, within ten miles of E.: for which the purchasers covenanted to pay, at the same time, at a stipulated rate:— As the delivery

ON the 10th of December, 1836, H. and R. M. Bishop sold and covenanted to deliver to McNairy and Walker, between the 15th and 20th of October, 1837, six hundred fat hogs, of a specified description, to be delivered in such pens as the vendors should select, within ten miles of Elizaville; and the vendees, at the same time, covenanted to pay for the hogs four dollars and fifty cents per hundred pounds, on the delivery thereof according to contract.

The vendees resided between twenty and thirty miles from Elizaville; and having never, so far as now appears,

received actual notice that the vendors would be ready to comply with their covenant, or that they had selected the place or places of delivery—they were, from some time prior to the 15th, until the 20th of October, 1837, in the county of Clark, about forty miles distant from Elizaville, collecting and weighing hogs which they had there bought from other persons.

But a written notice was left at the house of McNairy, with his wife, during the afternoon of Saturday, the 14th of October, 1837, and at the house of Walker during the night of the same day, with one of his sons over sixteen years old—stating that the vendors would " proceed to commence weighing the six hundred hogs"—" at the house of Alms Hart," on Monday, the 16th of October, 1837, " between the hours of 11 and 12 o'clock, A. M." and requesting the vendees to attend then and there.

At the time and place thus designated, the vendors commenced weighing hogs, and having weighed about two hundred and thirty hogs, such as their covenant described, they went to one Hord's, about four miles from Hart's, but within ten miles of Elizaville, and weighed as many more of the like hogs as made the total number six hundred and four; and having finished the process of weighing about " sunset," on the 20th day of October, they then announced, in the hearing of many of the neighbors who were present, and of a son of the vendee, Walker, who had just arrived, that they were ready to deliver the hogs according to their covenant. But neither of the vendees attending, there was no actual delivery and no payment of the price; and on the next day, most of the hogs, which were the property of divers of the neighbors who had brought them for the use of H. and R. M. Bishop, were sold to others by their owners, at the then market price of three dollars.

The vendors then brought an action of covenant against the vendees, averring the notice as before de-

Spring Term
1839.

*McNairy et al.*
vs
*Bishop et al.*

& payment were to be concurrent acts--in an action by the vendors, against the purchasers, for their failure to take the hogs, it was incumbent on the pltffs. to aver and prove, that they had selected the place or places within ten miles of E. and had fixed the day or days, within the prescribed period, for the delivery, had notified the defts. and were ready accordingly, with the full number of hogs, and offered to deliver them. But there was no need of weighing, or making a formal tender of the hogs, when no pur chaser appeared to receive them. The purchasers were not bound to go first to the vendors, nor to remain at home waiting for notice; they were entitled to *actual, personal,* notice, unless they prevented it from being so given. The statute relating to judicial notices has no ap plication to cases of this sort. A notice left at the residence of a purchaser, on the 14 of the month, when he was absent on business, in another coun-

ty, of an intending delivery on the 16th—was insufficient.——A notice of an intention to deliver at one place, is not sufficient for two places—though it may have been timely, and fairly served; if the purchasers had attended, and had found that there were not enough hogs at the place named in the notice, to fulfil the contract, they might have refused to receive them, and have departed, without incurring any responsibility; it could not be judicially presumed that they would there have received notice of another delivery.

scribed, and their readiness and offer to deliver the hogs, in fulfillment of their undertaking.

Upon a substantial traverse of those averments, a verdict and judgment were rendered in favor of the plaintiffs, for twenty two hundred forty six dollars and forty cents.

And this appeal brings up that judgment for revision.

Whether the foregoing facts were sufficient to maintain the action, is the only question we shall consider.

The delivery of the hogs and the payment of the price were concurrent acts; and though, therefore, it was incumbent on the plaintiffs in the action to show that they had, according to their covenant, done all they ought to have done towards fulfilling their undertaking, yet, in such a case, to entitle them to *special damages*, it was not their duty to weigh and make a formal tender of the hogs when neither of the vendees was present to receive them; such a ceremony, *for such a purpose*, would have been idle and unnecessarily inconvenient and expensive, in the absence of the purchasers. All that either reason or law required in such a case, and for such an end, was a readiness and offer to deliver the full number of hogs, according to the covenant, at such place or places, within ten miles of Elizaville, as the vendors had selected, provided they had previously given reasonable notice of such selection to the vendees, or had, in good faith, made proper efforts to give such notice, and had been eluded.

But neither the notice nor offer to deliver was, in our opinion, sufficient.

The statute prescribing the mode of giving judicial notices, does not apply to such a case as this, in which *actual* notice, if not prevented by the vendees, was necessary.

As the appellants had received no actual notice, from December 1836 to the 14th of October, 1837, of the fact that the appellees would deliver the hogs, or of their election as to the place or places of delivery, it was not their duty, either to go to the appellees, or to neglect other important business, and remain at home after the 14th, ready to receive notice if any should be

offered between that time and the 20th. And if the appellees had the hogs ready, or intended to have them ready, in compliance with their covenant, it seems to us, that they ought to have given, or in good faith endeavored to give, the proper notice to the appellants, personally, and before the eve of the first day upon which the delivery could have been made.

But the notice attempted, even if sufficient as to manner and time, was insufficient to sustain the offer to deliver the hogs at *Hord's.* Waiving any objection to it on the ground that it did not specify when or where the hogs would be *delivered,* but only suggested the time when and *a* place where the weighing would be commenced, the fact that it designated one place only, is in our opinion, sufficient to destroy its efficacy as a notification of a delivery at two different places, or at a place not designated. Had the appellees heard of the notice, and, instantly abandoning their business in Clarke, had hastened to Hart's, seeing, as they would have seen, only about two hundred and thirty hogs there, which alone they were under no obligation to receive, they might have refused to take them, and have gone away without responsibility. And we cannot judicially know or presume, that, had they thus gone to Hart's, they would there have been notified that the residue of the six hundred hogs would be delivered at Hord's, within the time prescribed by the covenant. As to the hogs at Hord's, and the offer to deliver them, the notice was no more applicable or effectual than it would have been had it only signified a wish that the appellants would, at some specified time, attend at some designated place for the purpose of receiving notice of the time and place or places of delivery. And it would certainly not have been their duty thus to wait on the appellees to receive notice.

Besides the only offer to deliver was made at *Hord's,* *on the evening of the last day, when and where there were not six hundred hogs to deliver.*

Now, although it is important that the integrity of such contracts should be sternly upheld, yet as the appellees had not expended much, if any money, in buy-

ing hogs in fulfilment of their covenant, and will, therefore lose only an ideal speculation, by losing this case, we do not feel inclined to relax the strict rules of law, for the purpose of imposing on the appellants the burthen of such a speculation to the amount of twenty two hundred and forty six dollars and forty cents—when they have neither received any consideration for it, nor been shown to have been legally guilty of even a technical breach of their covenant. Had not the price of hogs fallen, or had it risen, after the date of the contract, there might perhaps have been no offer by the appellees to comply with their contract. And, even though the price had fallen thirty three and one-third per cent. they had not in fact bought six hundred hogs, otherwise than by making arrangements with their neighbors, for the formal weighing and tender of *their* hogs, to be paid for only in the event of an acceptance of them, and a payment of the price by the appellants.

It seems to us, therefore, that, in reversing the judgment, as we think the rules of law require us to do, no injustice will be done to the appellees, and that they will have no cause to complain of hardship or loss.

Wherefore, the judgment is reversed, and the cause remanded for a new trial.