[No. 4208. Decided August 22, 1902.]

JOHN E. MATTSON, *Appellant*, v. FESTUS MATTSON *et al.*,
*Respondents.*

COMMUNITY   PROPERTY — PRESUMPTIONS — SUFFICIENCY   OF   EVI-
DENCE TO OVERCOME.

The presumption that lands purchased by the husband dur-
ing coverture were community property is overcome, where it
is shown that his earnings during coverture were barely suffi-
cient to support his family and that he had separate property in
the shape of cash more than sufficient to pay the price of the
lands so acquired.

DUTY OF GUARDIAN TO DEFEND ACTIONS AGAINST WARD.

Under Bal. Code, § 6432, which imposes the duty upon a guar-
dian of defending all actions brought against his ward, a guardian
is without authority to enter into a stipulation agreeing to
abide the result of an action under a defense imposed by an-
other party.

Appeal from Superior Court, Clarke County.—Hon.
ABRAHAM L. MILLER, Judge. Reversed.

*W. W. McCredie,* for appellant.

*W. II. Metcalf,* for respondent Aiken.

The opinion of the court was delivered by

WHITE, J.—This is an action on the part of the ap-
pellant to quiet his title to about one hundred acres of land
in Clarke county, Washington, as against his children, the
respondents herein. The respondents claim an interest
in the land as heirs of their mother, appellant's wife, now
deceased, and are asking for a partition of the said land.
The opposition comes from respondent Hilda Aiken. The
other respondents, Festus Mattson and Grace Mattson,
are persons of unsound mind, and incapable of attending
to their own affairs, and the respondent Berg has been

duly appointed and qualified, and is now their guardian, and has appeared in this action and stipulated as follows:

"It is hereby stipulated and mutually agreed by and between John Mattson and Grace Mattson, persons incapable of conducting their affairs, that the said A. J. Berg, guardian, hereby enters his appearance for and on behalf of himself, for and on behalf of his wards, the said Festus Mattson and Grace Mattson; that the said Festus Mattson and Grace Mattson's interest, if any there is in the real estate described in the complaint, is the same as the defendant's Hilda Aiken, and that if the court should find that the said Hilda Aiken has any interest in said real estate, that the court shall also find that Festus Mattson and Grace Matrson has an equal interest therein, and that in the final judgment entered in this case judgment shall be entered for and on behalf of said defendants or against said defendants as the said judgment is entered for or against the said defendant, Hilda Aiken.

"This agreement entered into in duplicate this 18th day of March, 1901.

W. W. McCredie,
Attorney for Plaintiff.
A. J. Berg,
Guardian for Festus Mattson
and Grace Mattson."

The question involved in this suit and to be determined is whether or not the said land was and is the separate property of the appellant, or community property in part or in whole of appellant and his deceased wife, the mother of respondents. The lower court declares it was community property, and appellant appeals.

John E. Mattson, the appellant, in 1875, was the owner of a quarter section of land about two miles from the land in controversy, for which he paid $700. In 1875 he sold one-half of this tract for $500 cash. In March, 1876, he married the mother of the respondents, and at that time had separate property as follows: $600 cash, and the re-

mainder of the quarter section above mentioned. This he sold in 1878 for $375. In 1879 or thereabouts he received as an inheritance from his mother $168. When he came to the United States from Finland he had two notes against friends in the old country,—one against a Robert Bowman, which was paid in 1881, and amounted to $96; one against Hermann Troberg, which was paid in 1881, or thereabouts, and amounted to $156. From April, after his marriage, until August, 1876, he fished for a livelihood, but from the evidence we think he did not earn more than enough to pay his family and ordinary personal expenses, over and above $50 which he paid on account of slashing thirty-six acres of land hereinafter mentioned. In the fall of 1876 he purchased from his wife's parents forty acres of land for the sum of $345, by paying off a mortgage for $300, with some accrued interest. This was done for two reasons, towit: His wife was in such a condition that she should live near her mother; the other was to relieve the parents from the burden of the mortgage, which seemed to be worrying them. The $345 cash paid by the appellant was his own separate money, and a part of the $600 cash he had at the time of his marriage. In the fall of 1879 his wife's parents again found themselves involved with a mortgage amounting to $589, and, to relieve them, appellant exchanged by deeds his forty acres for the one hundred in controversy, then owned by the parents, and on which the mortgage was, and assumed the said mortgage. All of said mortgage was paid by appellant from his separate property. His community earnings were more than consumed all the time. Said mortgage, except $225 or thereabouts, was paid while his wife still lived. The $225 was merged in a new mortgage on the place, then into personal notes, which were paid by the appellant from his own earnings more

than eleven years after his wife's death. The wife died intestate in 1884, and at that time the appellant was poorer by $400 than when he married in 1876. During the period of wedlock, appellant's land was not sufficiently improved to support his family. In September, 1900, appellant's daughter Hilda married a Mr. Aiken, and on the 13th day of March, 1901, this suit was brought to determine who owned this one hundred acres of land. Shortly after the appellant was married, his father-in-law expressed the desire to give, and says he did give, to the appellant and his wife thirty-six acres of land,—part of the tract on which the father-in-law was living. The appellant paid $50 for slashing on this tract. After this he discovered that there was a mortgage on the land and adjoining tract for $300. He resolved to move away. No deed was made to him and his wife. The title remained in his father-in-law. It is claimed by the father-in-law and mother-in-law that the gift of this thirty-six acres was taken in consideration when he purchased from his father-in-law the forty acres, and formed part of the consideration for the forty acres. It is very doubtful whether the forty acres was worth the mortgage assumed and paid by appellant. And we are inclined to believe the appellant when he says that this alleged gift was never perfected, and was not taken into consideration in the purchase of the forty acres. Where it is sought to establish a separate right in property, when the apparent title is in the community, the burden of proof to establish the separate character of such property rests upon the parties asserting it. The proof required to destroy this presumption should be sufficient to satisfy the minds of the court. It should be of sufficient weight to cause a reasonable person, under all circumstances, to believe that it counter balances the naked presumption. The property

is merely considered the property of the community until the contrary is shown by legal proof, and legal proof is the preponderance of the testimony under all the facts and circumstances in the particular case.    As we said in *Sackman v. Thomas,* 24 Wash. 683 (64 Pac. 827):

"If the conveyance is made during coverture, the presumption arises that it is community property. ·This, however, is only a presumption, and may be overcome by evidence.    Necessarily, this evidence, in most instances, is the knowledge of the husband or wife, of the facts touching the origin of the consideration."

We think the evidence in this case establishes the fact that the property in controversy was the separate property of the husband, and not the community property of the husband and the wife.

Festus Mattson and Grace Mattson are idiots or insane persons, according to the allegations of the complaint, and it is made the duty of their guardian *to defend* this action.    The law is as follows:

"It shall be the duty of every such guardian to prosecute all actions commenced at the time of his appointment, or thereafter to be commenced, by or on account of his ward, and to defend all actions [pending or] which may be brought against such ward."    § 6432, Bal. Code.

Stipulating to abide the result of the action under a defense interposed by Hilda Aiken is not defending the action, within the meaning of this section.

The judgment and decree of the court below is reversed and set aside, and this cause is remanded for further proceedings; and so far as Hilda Aiken is concerned, the court is instructed to enter a decree quieting appellant's title as against her.    The appellant to recover his costs in the court below and on this appeal against said Hilda Aiken.

REAVIS, C. J., and DUNBAR, ANDERS, MOUNT and HADLEY, JJ., concur.