RILEY, Respondent, v. STEVENSON, Appellant.

St. Louis Court of Appeals, April 24, 1906.

1. **CONTRACT: Consideration.** Where the purchaser of a farm at the time of paying for the same and receiving his deed asked the seller if the farm was all right and the seller said if it was not he would make it all right, this did not amount to an agreement on the part of the seller to compensate the plaintiff for damages inflicted upon the place by the seller's stock pending the treaty.

2. **JUSTICES OF THE PEACE: Statement of Account.** The statement of an account for personal property sold and delivered filed for action before a justice of the peace, was consistent with a contract for a sale at a stipulated price as well as for a sale at a reasonable value, and where the evidence was conflicting, instructions permitting a recovery on either theory were correct.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*J. H. Whitecotton* and *W. W. Barnes* for appellant.

The court should have given defendant's instruction in the nature of a demurrer offered at the close of plaintiff's case. The respondent had wholly failed to sustain the issues made by the pleadings filed in this case. The account filed shows no contractual liability and on the account stated recovery could only be had on the *quantum meruit* theory. Respondent's testimony in chief tended to prove a liability on contract, and the demurrer should have been sustained. The rule is well settled that a plaintiff cannot declare on one cause of action and recover on another. Hays v. Bunch, 91 Mo. App. 467; Christy v. Price, 7 Mo. 430; Penninger v. Reilley, 44 Mo. App. 261.

*James P Boyd* for respondent

GOODE, J.—This case originated before a justice of the peace on the following statement of account:

"Mr. William B. Stevenson          "April 18, 1903.
    To C. Riley, Dr.
    "To one (1) telephone and telephone stock, . . . . $39.00." Defendant filed this answer or counterclaim:
    "Now at this day comes the defendant herein and denies that he owes plaintiff anything, and further states that there is due this defendant from the plaintiff as per contract, the following amount and sum:
    "To damages to fence . . . . . . . . . . . . . . . .$25.00
    To damages to barn . . . . . . . . . . . . . . . .  5.00
    To damages to garden and lawn . . . . . .  5.00

    Total . . . . . . . .  . . . . . . . . .  . . . . . . . . . . . .$35.00
    "Which he pleads as his counterclaim and setoff."

Riley v. Stevenson.

The case proceeded in regular course to the circuit court, resulted in a verdict and judgment for plaintiff and an appeal was taken to this court.

Plaintiff sold defendant a farm in Monroe county September 24, 1902. After the sale of the farm had been closed, plaintiff proposed to sell defendant a telephone and some stock in a company known as Middle Grove and Paris line. Whether the company was incorporated or not, or the stock was merely a token of the interest held by Riley in a sort of partnership in an unincorporated concern, is not clear, nor is the question material. Riley testified that he offered to sell his interest to defendant for $39 and the latter agreed to buy it for that price, but afterwards refused to pay the money. Defendant testified that he told Riley he wanted the telephone which was in the farmhouse and asked Riley what it was worth; that the latter said defendant could have it for a reasonable price and no more was said about the matter. The counterclaim was for damages alleged to have been done to the fencing around the farm and to the farm itself, by horses and mules chewing on the fencing and getting into the garden and lawn. This important matter rests on an alleged contract said to have been made between Riley and Stevenson January 17, 1903, and on the day Stevenson gave Riley a check in payment for the farm. Here is the contract as testified to by Stevenson:

"Q. I will get you to state whether or not the contract with reference to this account, setoff, this bill, was in writing or not? A. No, sir.

"Q. Where did the conversation occur? A. Down in Mr. Hill's office. I wrote Mr. Riley a check, handed it to him, and I asked him if the place was all right and he said it was; if it was not he would make it right."

Stevenson swore that after that day he went somewhere and when he returned the next day this was the state of affairs:

"On the 18th of January I went there and there was a lot of mules there eating the fence. . . . I found them mules there; they had eaten the fence, garden and barn, and I found hogs in. I went to Mr. Riley and told him about it; said he would see about it; and I went to him the second time. Said he guessed he would turn it over to me, that he would turn it over to me."

Stevenson swore that some time after January, 1903, Riley said he did not want to do anything regarding the damage except to fix some palings on the fence.

The court instructed the jury to return a verdict in favor of plaintiff on the counterclaim and this ruling was unquestionably right. The transaction in regard to the sale of the farm had been completed when the alleged contract, which is the basis of the counterclaim, was made. There was no consideration shown for that agreement, even if plaintiff made it; and it is preposterous to contend that his remark, that if the farm was not right he would make it all right, was an undertaking to compensate for the sort or damage claimed by defendant. The evidence is well nigh conclusive that the defendant bought the telephone property and agreed to pay the price plaintiff asked. There was positive proof that defendant himself, when the case was first tried in the justice's court, swore he had bought the property in controversy and agreed to pay $39 for it. It is contended that the so-called certificate of stock was never delivered to defendant. The proof shows that after the sale of the telephone and telephone stock, and after defendant had taken possession of the farm, plaintiff offered him the certificate of stock and demanded payment, the telephone instrument being then in the house defendant occupied. Defendant refused to pay for the stock and instrument, and refused to permit plaintiff to remove the latter. This offer to deliver the stock and defendant's refusal to accept it and carry out his agreement, entitled plaintiff to recover the price.

It is said the court erred in refusing to sustain a

demurrer to plaintiff's case because the account filed showed no contractual liability and no recovery could be had on it except *quantum meruit;* whereas respondent testified to a positive contract. The account is for personal property sold and delivered to defendant and is consistent with a contract for a sale at a stipulated price. Hence, the court was justified in authorizing the jury to return a verdict for plaintiff for $39 if they found the property had been sold to defendant for that price. Defendant's testimony had some tendency to show the property was sold for no settled price, but for its reasonable value; therefore, the court gave an instruction permitting a veridct for plaintiff for the reasonable value of the property in dispute, if the jury found it was sold by plaintiff to defendant, but no price fixed.

We find no reversible error in the record and shall affirm the judgment. All concur.