[No. 12214.   Department Two.   August 5, 1915.]

GEORGE A. CLOUGH, *Respondent*, v. ELLEN S. H. MONRO, AND ELLEN S. H. MONRO, *as Guardian of C. E. Monro, an Incompetent Person, Appellants.*[1]

CORPORATIONS—TRANSFER OF STOCK—ASSIGNMENT—CONSIDERATION. A credit on a loan to the assignor, is sufficient consideration for an assignment of mining stock, and it would be a sufficient consideration that the assignment was made as partial security for the loan.

PRINCIPAL AND AGENT — PROOF OF AGENCY—STATEMENTS OF AGENT. Neither the fact of agency nor the extent of the agent's authority can be proved by admissions or declarations of the agent to third persons in the absence of the principal.

WITNESSES—EXAMINATION—REITERATION.   It is not error to curtail the examination of a witness by excluding reaffirmations of his former testimony.

APPEAL—REVIEW—HARMLESS ERROR.   On a trial *de novo*, the improper exclusion of a letter which is in the record, is harmless error.

INSANE PERSONS—ACTIONS AGAINST—GUARDIANS—PROCESS.   Under Rem. & Bal. Code, § 1670, authorizing service of process upon the guardian of an incompetent, an action against an incompetent may be brought in form, and entitled in the caption, against the guardian as such.

[1]Reported in 150 Pac. 1190.

SAME—ACTIONS AGAINST—LIMITATION. Rem. & Bal. Code, § 1477, requiring suits on claims against estates of decedents within three months after rejection of the claims does not apply by analogy to claims against the estate of an incompetent person, and the same are not barred three months after rejection.

PLEADING—ADMISSIONS—FAILURE TO DENY. A general allegation that defendant was the duly, appointed, qualified and acting guardian of an insane person, not moved against or denied, sufficiently establishes the guardianship.

PLEADING—ANSWER—ADMISSIONS. An answer to a specified paragraph of a complaint, admitting that a claim against a guardian was presented and rejected, and denying that any sum was due, is a sufficient admission of the presentation and rejection of the particular claim alleged in such paragraph.

INSANE PERSONS—ACTIONS—AUTHORITY OF GUARDIAN—ADMISSIONS. The guardian of an incompetent person, defending an action on a claim against the estate, has power, when acting in good faith, to admit the presentation and rejection of a claim therefor, the facts being within the personal knowledge of the guardian.

HUSBAND AND WIFE—GUARDIANS—ACTIONS — JUDGMENT — COMMUNITY OR SEPARATE DEBT. A judgment upon a community debt against the wife of an insane person "as guardian of the estate of her husband, M. . . . and against the marital community" of the two is not a personal judgment against the wife enforcible against her separate estate.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered February 28, 1914, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*A. W. Buddress*, for appellants.

*Shorett, McLaren & Shorett*, for respondent.

ELLIS, J.—This action was brought to recover the balance due on a contract for the sale of certain mining stock. On November 21, 1912, at San Francisco, California, C. E. Monro entered into a contract with J. P. Clough, brother of the plaintiff, whereby Monro agreed to purchase from J. P. Clough 10,000 shares of the capital stock of the Dwyer-Libby Mining & Development Company, a Nevada corpora-

tion operating a leased mine in that state, for the sum of $2,000. Two hundred and fifty dollars was paid at the time of the sale, and the balance was agreed to be paid in seven monthly installments of $250 each, the deferred payments bearing interest at six per cent. Subsequent to the date of the contract, the purchaser paid an additional $250, leaving a balance of $1,500 unpaid principal. On November 26, 1912, J. P. Clough assigned the contract to the plaintiff. Both the contract of sale and the assignment are evidenced by written memoranda.

In December, 1912, Monro sent $1,500 to the Quinn River Bank, in Nevada, for the use of the Dwyer-Libby Mining & Development Company, and it is admitted that the money was so used by that company. In March, 1913, the Dwyer-Libby Company forfeited its lease of the Nevada property and a new company was immediately organized which took a lease of the same property. The new company, the Charleston National Mining Company, was organized by J. P. Clough, who was formerly connected with the Dwyer-Libby Company. C. E. Monro was adjudged insane on May 24, 1913, and his wife, Ellen S. H. Monro, was appointed guardian of his estate.

There is no question raised as to the existence of the contract and the payment thereon of $500, but the defendants, in their answer, allege that it was subsequently agreed that the $1,500 advanced by Monro to the Dwyer-Libby Company should be credited on the contract in suit.

The court made findings to the effect that C. E. Monro is an incompetent, and that Ellen S. H. Monro is the guardian of C. E. Monro, and that the guardian and the incompetent are husband and wife; that C. E. Monro entered into the written contract with J. P. Clough for the purchase of the stock, and that J. P. Clough assigned the contract to plaintiff; that the contract was made by Monro on behalf of himself and the marital community consisting of himself and wife; that no part of the contract price of $2,000 has been

paid except $500; that on or about June 25, 1913, plaintiff presented his verified claim to the guardian for $1,553.33, and that the claim was rejected and disallowed on or about July 7, 1913. The court thereupon concluded that the plaintiff is entitled to judgment against the defendant, as guardian, and against the marital community consisting of defendant and the incompetent in the sum of $1,620.55, together with costs and disbursements. Judgment went accordingly. Defendants appeal.

We shall consider the appellants' several contentions, discussing the evidence and the pleadings in connection therewith so far as necessary. Throughout their briefs the appellants repeatedly assert that the contract in suit was procured through fraud collusively practiced by the respondent and his brother, J. P. Clough, on C. E. Monro, and that Monro was at the time mentally incompetent. We shall not consume time and space in discussing either of these claims. It is sufficient to say that neither of them was raised by the pleadings and neither of them is sustained by the evidence.

It is also asserted that the assignment of the Monro contract from J. P. Clough to respondent was without consideration, and that J. P. Clough could, therefore, deal with the contract as he saw fit. As to the consideration for this assignment, the respondent testified, in substance, that he and J. P. Clough together purchased 100,000 shares of stock of the Dwyer-Libby Company from one Dwyer for $5,000; that the respondent advanced to his brother $2,500 to pay his half of the purchase price; that the stock purchased by Monro from J. P. Clough was a part of this stock, and that the assignment of the contract was made in consideration of a credit on this $2,500 loan. J. P. Clough testified that he purchased the one hundred thousand shares of stock; that he borrowed from the respondent $5,000 with which to pay the purchase price, and that he assigned the Monro contract to the respondent as partial security for the loan. Whichever view is adopted, it is clear that the respondent was not a

mere figurehead or trustee. He held both the legal and the beneficial interest, so that his brother retained no right to agree to cancel the contract on any terms without respondent's consent.

The appellants' main contention is that the respondent, through his brother, as agent, agreed that the remittance of $1,500 made by Monro to the mining company should be taken as payment of the debt here in suit, and that the court erred in finding that the debt is not fully paid. The facts touching this transaction, as developed by the evidence, are substantially these: J. P. Clough desired that Monro advance to the Dwyer-Libby Mining & Development Company $1,500 to be used in developing the mine. Monro was willing to make the advancement, but desired, in order to do so, to make some arrangement either for payment or for further time on the contract here in question. The respondent testified that he authorized his brother, J. P. Clough, to communicate to Monro his willingness to accept, as a substitute for the contract, the note of Monro, signed by the Dwyer-Libby Company and by Nutter and Libby, two other men interested in the mine, the note to be also secured by a mortgage upon Seattle real estate; that this was the only proposition to which he ever assented, and that this proposition was never carried out; that if his brother, J. P. Clough, ever represented to Monro, or to any one else, that the respondent had consented to allow the $1,500 sent to the Nevada bank for the use of the mining company to be applied as payment on the contract in suit on any other terms, the respondent never knew or heard of it. On December 21, 1912, J. P. Clough sent a telegram from San Francisco to Monro at Seattle as follows:

"Your request confirmed. Send fifteen hundred. Wire Sprague at once."

The Sprague referred to was the cashier of the Quinn River Bank. On January 25, 1913, J. P. Clough wrote

Monro a letter containing, among other things which are immaterial here, the following:

"Just sent you a telegram and will explain the situation as it is at present. I took the matter up with my brother and asked him to assist me once more, this he declined to do for two reasons. He thinks the company's note would be very slow in coming. The Co. promised my brother when he allowed you to send the $1,500 to the mine that they would furnish him ample securities accepted by some reputable bank in Seattle. This they have not done nor mentioned since that date."

J. P. Clough corroborated the respondent's statement that his only proposition was to take a note for the amount due on the Monro contract, signed by Monro, Nutter, Libby and the Dwyer-Libby Company, and further testified to the effect that Monro had wired him that he, Monro, had sufficient security to meet his brother's condition, and that it was in response to that information that the above telegram was sent. After this testimony was admitted, the telegram and letter were ruled out, on the ground that there was no evidence connecting the respondent with them or showing that J. P. Clough had authority to bind the respondent. The then counsel for the appellants thereupon undertook to prove, by reference to certain other telegrams sent by J. P. Clough to Monro and by certain admissions of J. P. Clough to Mrs. Monro, after she was appointed guardian, that he had assumed throughout to act as agent for the respondent. These offers were rejected, the court saying:

"Do you know of any law that has been established any better than that you cannot prove agency by the declarations of the alleged agent?"

From the character of the evidence then offered, it is clear that the court meant declarations to third parties. Though the fact of agency may be proved by the direct testimony of the agent himself (*Bender v. Ragan*, 53 Wash. 521, 102 Pac. 427), neither the fact of agency nor the extent of the agent's authority can be proved by admissions or declarations of the

alleged agent to third parties in the absence of the supposed principal. *Allen v. Farmers & Merchants Bank*, 76 Wash. 51, 135 Pac. 621; *Larson v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294, 111 Am. St. 904; *Western Security Co. v. Douglass*, 14 Wash. 215, 44 Pac. 257; *Comegys v. American Lum. Co.*, 8 Wash. 661, 36 Pac. 1087.

Counsel then proceeded to question J. P. Clough as follows:

"Q. You were undoubtedly authorized by your brother to send anything up here which you did send? Mr. McLaren: He has gone over that time and again as to what his brother consented to do and what he would not do. The Court: I sustain the objection. Q. You had the permission or consent of your brother, or the understanding with your brother that you were authorized or directed to send these telegrams and make these statements to Mr. Monro, weren't you? Mr. McLaren: I object to that as calling for a conclusion of the witness. The Court: Objection sustained."

It is contended that the exclusion of these questions is reversible error. The witness had already in effect answered the same questions. He had testified in detail as to the negotiations with his brother prior to the sending of the $1,500 by Monro to the Nevada bank. He had definitely stated that the respondent had refused to consent to any arrangement except the substitution of the note of Monro, Nutter, Libby and the mining company, secured by Seattle property, for the Monro contract; that Monro had telegraphed him to the effect that he had security and that it was in response to that telegram that he wired Monro to send the money. Had the witness answered the questions propounded in the affirmative, it would not have changed the result. It would have been a mere reaffirmation, as a conclusion, of what he had already testified to. The ground had already been thoroughly covered. There was no error in excluding the question.

It is next urged that the court erred in ruling out the letter and telegram. In view of the explanation to the effect

that the telegram was sent in response to one from Monro that the security would be furnished, we think that the telegram at least was improperly ruled out. The error, however, does not necessitate a reversal. The trial here is one *de novo*. Rem. & Bal. Code, § 1736 (P. C. 81 § 1225). The telegram and letter are both before us with a full explanation of the circumstances under which they were sent. Read in the light of the other evidence, they do not discredit the respondent's claim that he never consented, or authorized his brother to consent, that the remittance to the mining company should be considered a payment on the contract, except upon the substitution of security which was never furnished.

This also disposes of the appellants' further claim that the respondent by his silence, when he learned that the money had been sent, though he talked with Monro several times thereafter, ratified an agreement by his brother that the remittance should be considered a payment on the contract. There is no evidence, however, that even the brother so agreed, either as agent or otherwise. There was, therefore, nothing to ratify. Moreover, even assuming that J. P. Clough had agreed to accept the note of the mining company alone, the evidence shows that no such note was ever furnished. It is obvious that respondent, by mere silence, could not be held to ratify a thing which was never performed.

We are satisfied, from a careful reading of the entire evidence, that J. P. Clough throughout was acting for himself and Monro in an endeavor to raise money for the mine, rather than as agent for respondent. The finding that the debt was not paid is sustained by the evidence. There is no competent evidence to the contrary.

The appellant urges that the incompetent himself was a necessary party defendant, and that the action cannot be maintained against the guardian. In *United States Fidelity & Guaranty Co. v. Howell*, 74 Wash. 596, 134 Pac. 490, we held that, under Rem. & Bal. Code, § 1670 (P. C. 409 § 779), an action against an incompetent may be brought in form,

and entitled in the caption, against the guardian as such, and that service of summons upon the guardian as such confers jurisdiction to enter judgment against the estate of the ward. We are content to abide by that rule.

Equally futile is the claim that the action is barred because it was not commenced within three months after the claim was presented to the guardian. It is conceded that the statute governing guardianship of incompetents contains no such provision. Rem. & Bal. Code, §§ 1654-1673 (P. C. 409 §§ 747-785). But it is argued that the court, in recognition of a supposed analogy between such guardians and executors of estates of decedents, should adopt the limitation prescribed in Rem. & Bal. Code, § 1477 (P. C. 409 § 349), as to suits on claims against estates in probate. The analogy, however, is more apparent than real. The obvious purpose of the above section is to insure an early settlement of the estate, to the end that the decree of distribution may be entered and the executor or administrator discharged. In the case of a guardian or curator of the estate of an incompetent, no such reason exists. Such guardianships are intended to, and usually do, last during the life and disability of the incompetent. There is, therefore, no reason for a special limitation as to suits on rejected claims. In any event, the courts cannot declare a limitation which the legislature has failed to enact.

It is next objected that there was neither allegation nor proof as to where or by what court the guardian was appointed. In the complaint, it is alleged that C. E. Monro is an incompetent person and that Ellen S. H. Monro is the "duly appointed, qualified and acting guardian of said incompetent person." No motion was made to make this allegation more definite and certain. The answer presents no denial of it. It was clearly assumed, on both sides throughout the trial, that the defendant was the legally acting guardian. To reverse the trial court on this ground would be technical in the extreme.

A kindred objection is urged in that there was no evidence that the claim here involved was ever presented to or rejected by the guardian. In the fifth paragraph of the complaint it is specifically averred that the claim was presented on or about June 25, 1913, and in the sixth paragraph that it was by the guardian rejected and disallowed on or about July 7, 1913. The fourth paragraph of the answer is as follows:

"Answering paragraph V, admit that on or about the date named, plaintiff presented a verified claim to the guardian but denies each and every other allegation in said paragraph. contained, and denies that there is a balance of $1,500 or any other sum due from defendants or either of them to the plaintiff."

In the fifth paragraph of the answer, referring to the sixth paragraph of the complaint, it is admitted "that said claim was rejected and disallowed by the defendant as guardian," but the amount claimed to be due is denied. It is urged that these are denials that this "particular claim" was presented and rejected. There is no merit in this contention.

But it is also urged that the guardian for an infant or an incompetent has no power to admit or to waive proof of anything. In this connection counsel mainly relies upon the decision of this court in *Mattson v. Mattson*, 29 Wash. 417, 69 Pac. 1087, holding that, under the statute, Rem. & Bal. Code, § 1662 (P. C. 409 § 763), imposing the duty upon the guardian to defend all actions against his ward, the guardian is without authority to enter into a stipulation to abide the result of an action under the defense interposed by another party. That decision is clearly correct. Such a course would be to shirk the direct mandate of the statute, which is a very different thing from an admission of a fact necessarily known to the guardian, in connection with a *bona fide* defense by the guardian of an action against the ward's estate. Substantially the same provision is found in the statute relating to the duty of the guardian of an infant, Rem.

& Bal. Code, § 1636, subd. 5 (P. C. 409 § 709), and also in the statute relating to the appointment of a guardian *ad litem* to defend for a minor, Rem. & Bal. Code, § 1644 (P. C. 409 § 725). Yet this court has held that guardians of infant heirs may, when acting in good faith, admit in their pleadings in partition proceedings that certain land in controversy is the community property of the parents of their wards, notwithstanding the fact that the admission may be prejudicial to formerly asserted claims. *Kromer v. Friday,* 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671. It is not pretended that the guardian here was not acting in good faith. Nor is it claimed that the admission in her answer was contrary to the fact. We are not required to go so far as this court went in the *Kromer* case to sustain the admission here. The admission was of a fact necessarily within the knowledge of the guardian, and not of any fact touching antecedent dealings with the ward nor going to the merits of the claim itself.

While we have held that an executor or administrator has no power to waive the statute of nonclaim, Rem. & Bal. Code, § 1479 (P. C. 409 § 353), providing that no holder of a claim against an estate shall maintain an action thereon unless a claim shall have been first presented (*Ward v. Magaha,* 71 Wash. 679, 129 Pac. 395), we have never held that the guardian, or even an administrator, may not admit the fact that the claim was actually presented and rejected. The very power of the guardian to reject a claim when presented implies the power to admit the justice of a claim and allow it. In view of this power, it would seem to be an extremely harsh and technical rule which would permit the guardian for the first time, on appeal, to raise the question of lack of proof of presentation of a claim, which presentation she admitted in her pleadings in the court below, and the truth of which admission she does not even now impugn. Were there any circumstance in this case raising a suspicion of collusion or lack of good faith on the part of the guardian in making this

admission, or anything raising a doubt as to the truth of the admission, a different case would be presented, but nothing of this kind is suggested.

Finally, it is contended that the court erroneously entered a personal judgment against Mrs. Monro. The judgment itself negatives this claim. It reads as follows:

"It is hereby ordered, adjudged and decreed, that the plaintiff, Geo. A. Clough, do have and recover of and from the said Ellen S. H. Monro as guardian of the estate of her husband, C. E. Monro, an incompetent person, and against the marital community consisting of said Ellen S. H. Monro and said C. E. Monro, in the sum of $1,620.55. . . ."

The debt was admittedly contracted during the existence of the marital relation of Monro and wife. It was the personal debt of Monro and of the community consisting of himself and his wife. The judgment, by its terms, is one which can only be satisfied out of the separate property of the incompetent and the community property of the incompetent and his wife. It cannot be construed as a personal judgment against Mrs. Monro or as binding her separate property.

We find no error in the record which would warrant reversal. Judgment affirmed.

MORRIS, C. J., CROW, MAIN, and FULLERTON, JJ., concur.