WALTER J. TRAUTMAN, RESPONDENT, v. HENRY P. SCHROEDER, APPELLANT.—93 S. W. (2d) 303.

St. Louis Court of Appeals. Opinion filed April 7, 1936.

Respondent's motion for rehearing overruled April 28, 1936.

*Edward Kooreman* and *Floristel, Mudd, Blair & Habenicht* for appellant.

*Thompson, Mitchell, Thompson & Young, Richmond C. Coburn* and *Charles M. Spence* for respondent.

SUTTON, C.—This action, which was commenced in the Circuit Court of the City of St. Louis, on November 11, 1931, is founded on a promissory note, executed by defendant in favor of plaintiff in the sum of $2,842.50, on May 27, 1929. The note is payable on demand with interest at the rate of six per cent per annum from date until paid. The note was given for the purchase price of 150 shares of the common capital stock of the General Industrial Alcohol Corporation. Concurrently with the execution of the note another instrument in writing was executed by the parties, and the failure of plaintiff to perform the obligations imposed on him by this instrument is pleaded as a defense.

Prior to the organization of the General Industrial Alcohol Corporation, plaintiff was president and manager of the General Industrial Alcohol Company located at New Orleans. Defendant had the exclusive representation of the General Industrial Alcohol Company for the sale and distribution of its products in St. Louis and the immediate vicinity. He sold the products of the company as a jobber, and also on commission.

When the General Industrial Alcohol Corporation was organized, plaintiff became its president and manager at $25,000 a year. The General Industrial Alcohol Corporation was organized through a merger of the General Industrial Alcohol Company with a number of other corporations, including the Greendale Corporation at Lawrenceburg, Indiana, the Bay City Corporation at Bay City, Michigan, the National Industrial Corporation at New Orleans and the American Molasses Corporation at New Orleans.

The General Industrial Alcohol Corporation, upon its organization, issued bonds to the amount of about a million and a half dollars, and an equal amount of common stock. The merger of the various corporations, resulting in the organization of the General Industrial Alcohol Corporation, was effected by a group of bankers in New York. Of the stock issued by the corporation five thousand shares were allotted to plaintiff, at $18.95 per share, which was the bankers' price. The stock was at that time quoted on the New York Stock Exchange at $32.50 per share.

Plaintiff was elected president of the General Industrial Alcohol Corporation early in 1929. A group of New York bankers organized and owned the Maurvin Corporation. It was a Delaware corporation, and was organized early in 1929. It was from this corporation that plaintiff got his allotment of five thousand shares of the stock of the General Industrial Alcohol Corporation. Plaintiff and other persons who obtained an allotment of the stock at the bankers' price were obligated by contract not to sell the stock before November 15, 1929. This presumably was for the purpose of preventing a depression of the market quotations on the New York Stock Exchange, until dis-

tribution of the stock by the New York bankers composing The Maurvin Corporation had been completed.

In addition to the 150 shares of stock sold to defendant by plaintiff out of his allotment of 5,000 shares, plaintiff sold 150 shares to Clarence Morgan of Chicago, 150 shares to E. J. Shannon, of Cincinnati, and 1,000 shares to Joseph Schwarz of New Orleans.

All of the shares of the stock of the General Industrial Alcohol Corporation were placed in a voting trust at the time of the organization of the corporation. This voting trust was never terminated.

The instrument executed by plaintiff and defendant, at the time of the execution of the note sued on, is as follows:

"Walter J. Trautman, hereinafter referred to as the vendor, hereby sells and Henry P. Schroeder, hereinafter referred to as the vendee, hereby buys for the price and sum of $18.95 per share, one hundred fifty (150) shares of the common capital stock without par value of General Industrial Alcohol Corporation, to evidence which purchase price the said vendee has delivered to the said vendor, the receipt of which is hereby acknowledged, the vendee's note payable on demand to the said vendor for the sum of $2,842.50, with interest at the rate of six per cent per annum from date until paid, the said vendor obligating himself not to demand payment of said note until he is in a position to deliver the stock hereby sold.

"It is understood that said stock is presently represented by voting trust certificates, which are being held by the National City Bank of New York for account of the said vendor to be delivered to him on November 15, 1929, or prior to that date with the consent of The Maurvin Corporation.

"It is further understood that said vendor will deliver voting trust certificates representing the above mentioned one hundred fifty (150) shares of the common capital stock without par value of the General Industrial Alcohol Corporation to the said vendee as soon after the voting trust certificates for same, now being held for his account by the National City Bank of New York, are delivered to him upon payment of the said note in principal and interest by the said vendee, until which time the said voting trust certificates are to be attached to said note as collateral security.

"It is further understood and agreed that this sale is made on condition that said vendee will not, prior to November 15, 1929, sell or offer to sell the said stock or any part thereof without the consent of the said vendor, it being understood that said stock was purchased by the said vendor on condition that he would not, prior to November 15, 1929, sell or offer to sell the same except with the consent of The Maurvin Corporation, and he binds and obligates himself to give the said vendee consent to sell the same prior to November 15, 1929, if he,

himself, obtains consent to such sale prior to November 15, 1929, from The Maurvin Corporation.''

The trial, with a jury, resulted in a verdict for defendant, and judgment was given accordingly. Plaintiff filed a motion for a new trial. The court, by its order duly made and entered of record, sustained the motion for a new trial, on the ground that ''the verdict is not responsive to the pleadings,'' and ordered the verdict and judgment set aside. From this order defendant appeals.

Plaintiff concedes that the order granting a new trial cannot be justified on the ground specified by the court, but contends that the order may be justified on other grounds specified in the motion for a new trial.

It should be observed, at the outset of the discussion of the question, as to whether or not the court erred in granting plaintiff a new trial, that the plaintiff is seeking to recover on a contract not pleaded, that is, on a promissory note payable on demand, ignoring the other writing concurrently executed. These writings, having been concurrently executed, constitute the contract of the parties, and must be read together as one instrument. So read, it becomes obvious that defendant did not obligate himself to pay $2,842.50 on demand, as pleaded, but obligated himself to pay $2,842.50 on demand after plaintiff got in a position to deliver the stock sold to defendant, which implies an obligation on the part of the plaintiff to deliver, or offer to deliver, the stock sold, as a condition precedent to his right to recover the purchase price. Moreover, if plaintiff duly tendered delivery of the stock and defendant wrongfully refused to accept the same and pay the purchase price thereof and thereby breached the contract, this did not entitle plaintiff to recover the purchase price unless he kept the tender good; otherwise he was only entitled to recover damages for the breach. In other words, if plaintiff offered to deliver the stock in accordance with the terms of the contract, and defendant wrongfully refused to take the stock and pay for it, then plaintiff was entitled to hold the stock for the defendant and sue him for the unpaid purchase price, or to sell the stock as the agent of the defendant, or keep it or dispose of it as his own, and sue defendant for damages for the breach of the contract. These principles are elementary, and need no citation of authorities. Nevertheless, see: Stix, Baer & Fuller Dry Goods Company v. Ottawa Realty Co., 273 Mo. 376, 202 S. W. 577; Riley v. Stevenson, 118 Mo. App. 187, 94 S. W. 781; Central Flour Mills Company v. Gateway Milling Company (Mo. App.), 213 S. W. 131; Kirkpatrick v. Alexander, 44 Ind. 595; Cullum v. Wagstaff, 48 Pa. 300; Spooner v. Baxter, 16 Pick. 409; Sears v. Conover, 34 Barb. 330; McNairy v. Bishop, 8 Dana 150; Bellows v. McKenzie, 212 Mass. 601; Hamilton v. Finnegan, 117 Ia. 623; Cuthill v. Peabody, 19 Cal. App. 304; Osgood v. Skinner, 211 Ill. 229; Mc-

Gowin v. Dickson, 182 Ala. 161; Clough v. Morro, 86 Wash. 507; Clewes v. Jamieson, 182 U. S. 461; Lebus v. Roode, 16 Ky. Law. 128; Woodward v. Tyng, 123 Md. 98.

The record here not only wholly fails to show that plaintiff ever offered to deliver, when he was in a position to deliver, the stock sold to defendant, but it affirmatively shows the contrary.

Defendant testified that he had a conversation with plaintiff in New Orleans, in December, 1929, and on that occasion asked plaintiff for the 150 shares of stock which he had purchased from him, and that plaintiff replied: "I have not got the stock. I cannot deliver the stock. You don't have to worry about the note. We agreed I was going to take care of you, and I will destroy that note." The record discloses no denial by the plaintiff that he had that conversation with defendant, or that he made that statement to him.

No demand of defendant was made by plaintiff for the payment of the note, and no offer was made to deliver the stock, until June 17, 1931, when plaintiff wrote the defendant that he had arranged to place the note, with 150 shares of the stock, with the Canal Bank and Trust Company for collection, and requested defendant to pay the note on receipt of notice from the St. Louis bank to which it would be sent. At that time the General Industrial Alcohol Corporation had passed out of existence through a merger with the American Solvents and Chemical Corporation, which merger was consummated in May, 1930, and was effected by the exchange of the stock of the General Industrial Alcohol Corporation for the stock of the American Solvents and Chemical Corporation. The evidence does not show that either the note or the stock was ever sent to the St. Louis bank. Nor does the evidence show that plaintiff was in possession of the stock at that time, but shows the contrary. All of the plaintiff's General Industrial Alcohol Corporation stock, including the stock sold to defendant, was exchanged for the stock of the American Solvents and Chemical Corporation. This exchange was made without the knowledge or consent of defendant. He was not consulted concerning it. That this exchange was made is shown by a letter to defendant from plaintiff's attorneys, as follows: "We are handing you herewith a printed letter from the Stockholders' Protective Committee of the American Solvents and Chemical Corporation, which was sent to us by Mr. Walter J. Trautman. This letter concerns the stock which we are holding for your account on behalf of Mr. Trautman." The printed letter from the Stockholders' Protective Committee enclosed with the letter from the plaintiff's attorneys to defendant is addressed "To the Holders of American Solvent and Chemical Corporation $3 Cumulative Convertible Preference Stock and Common Stock." It then proceeds to inform the stockholders of the American Solvents and Chemical Corporation that the corporation had suffered heavy losses,

resulting in the default in the payment of interest due on its bonded indebtedness, and urges such stockholders to deposit their stock immediately with the Stockholders' Protective Committee to expedite some sort of contemplated reorganization of the American Solvents and Chemical Corporation.

Plaintiff testified that he did not recollect and could not recall whether or not he had exchanged the 150 shares of the General Industrial Alcohol Corporation stock sold to defendant for stock of the American Solvents and Chemical Corporation, and did not know whether he still had that 150 shares of stock or not.

Plaintiff further testified that the General Industrial Alcohol Corporation was financially sound at the time of its merger with the American Solvents and Chemical Corporation.

The records of the General Industrial Alcohol Corporation, in the possession of the receiver of said corporation, shows that the General Industrial Alcohol Corporation was taken over under merger with the American Solvents and Chemical Corporation in May, 1930, and that all of the shares of the stock held by the plaintiff, or for or on his account, were converted into American Solvents and Chemical Corporation shares.

It thus becomes obvious that the record not only fails to show a tender of the stock by plaintiff, in accordance with the terms of the contract, but affirmatively shows the contrary. But if it could be said that there was such a tender and a wrongful rejection thereof, the plaintiff having disposed of the stock as his own, his remedy is a suit, not for the purchase price, but for the damages for the breach of the contract.

Plaintiff urges in argument that the contract is an ordinary pledge agreement, and that, if there was a conversion of the stock held by plaintiff under the pledge agreement, defendant's remedy is by an action or counterclaim for damages for the conversion. The argument proceeds upon a false premise. The contract is not an ordinary pledge agreement. It is an executory contract of purchase and sale, wherein it is expressly agreed that the stock is not to be delivered until the purchase price is paid. There is a wide difference between this contract and an ordinary pledge agreement, where the owner of stock pledges it to another as security for the payment of a debt. The defendant in this case never became the owner of the stock.

Inasmuch as it clearly appears, that, under the undisputed facts, plaintiff is not entitled to recover, it is manifest that the court erred in granting him a new trial.

The Commissioner recommends that the order of the circuit court granting plaintiff a new trial be reversed and that the cause be remanded to said court with directions to reinstate the judgment entered on the verdict.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court.

The order of the circuit court granting plaintiff a new trial is accordingly reversed and the cause remanded with directions to reinstate the judgment entered on the verdict. *Hostetter, P. J.*, and *Becker* and *McCullen, JJ.*, concur.