BANK OF EVANSVILLE, Appellant, vs. KURTH, Respondent.

*February 5—March 5, 1918.*

*Sales: Fraud: Written contract: Parol evidence of prior conversations: Bills and notes: Holder in due course: Knowledge of contract affecting payment: Negotiable instruments: Time of payment.*

1. Where, in an action upon promissory notes given for a part of the purchase price of an electric lighting plant, one defense was that the purchase had been induced by fraud, parol evidence as to conversations and discussions between the parties to the sale, leading up to the execution of a written contract, was competent on that issue, the terms of the written contract not being sought to be varied thereby.

2. A finding by the jury that at the time of purchasing the notes in suit the plaintiff bank had, through its president, who was also an officer of the vendor of the lighting plant, actual notice of the contents of the written contract of sale, which contained provisions affecting the time of payment of the notes, is *held* to be sustained by the evidence.

3. Construing together a contract for the sale of a lighting plant and promissory notes given for a part of the price, the notes

were, as to persons with knowledge of the terms of the contract, rendered nonnegotiable (under sub. (3), sec. 1675—1, Stats.) by a provision in the contract under which the time of payment of the notes was uncertain and might never occur if the plant failed to earn more than needed repairs.

APPEAL from a judgment of the circuit court for Rusk county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

Action upon two promissory notes. The defense was that plaintiff was not a holder in due course; that defendant was induced by the false and fraudulent representations of the Frost Engine Company to purchase the electric lighting plant at Weyerhauser, for a part of the purchase price of which the notes in suit were given; and that there was a breach of the written warranty contained in the contract of sale accompanying the notes. Such written contract specified, among other things, the plant sold, provided for its removal by the vendor to another location, and for certain future services at fixed prices. The provisions as to payments and warranty were as follows:

"The said *Theo. Kurth* hereby agrees to pay for this plant the sum of four thousand dollars ($4,000) as follows: One note of $1,000 bearing six per cent. interest, payable within three years, or any time after one year from date. This note to be secured by real-estate mortgage. Balance of $3,000 payable in monthly instalments the 20th of each month in sums of fifty per cent. or more of the monthly earnings of the plant. Said payments to be indorsed on one or more of five notes to be given by said *Theo. Kurth,* for the sum of $600 each. . . . In case of serious accident to the plant in case of storm, etc., it is agreed that payments may be deferred on the above notes until the cost of needed repairs can be paid for out of the earnings of the plant. The Frost Engine Company hereby guarantees the above material for a period of one year, and any defective parts or workmanship will be replaced free of cost."

The court submitted the issues to the jury in a special verdict, and the jury found: (1) When negotiating for the

sale of the lighting plant to the defendant, F. S. Frost, the agent of the Frost Engine Company, represented in substance to the defendant, in order to induce him to purchase said property, that the engine had a capacity of at least twenty-eight horse power and that the lighting plant had sufficient capacity to properly light the village of Weyerhauser as it then existed without making additions to the plant for several years; (2) the defendant purchased said property relying upon said representations and believing them to be true; (3) said representations were false; (4) the defendant, considering his intelligence and experience, was justified in relying upon the truth of said representations; (5) the difference in value, including interest, between what the lighting plant was worth and what it would have been worth had it been as represented, was $1,520; (6) the lighting plant, including the engine, generator, and batteries, at the time the plant was delivered to the defendant, was in a defective condition; (7) the difference in value, including interest, between what said property was worth and what it would have been worth if it had been free from such defects and in the condition as guaranteed by the written contract, was $880; (8) at the time George L. Pullen, the president of the plaintiff bank, purchased the notes in question on behalf of the bank, he had actual notice of the existence and contents of the written contract; (9) plaintiff did not purchase said notes in good faith without any notice of the fraud or other unlawful means by which said notes were obtained; and (10) the court found that the face amount of said notes, with interest to date of verdict, less payments made thereon, was $1,102.08. The court entered judgment for defendant dismissing plaintiff's complaint and it appealed.

For the appellant there were briefs by *L. J. Rusk* of Chippewa Falls, attorney, and *T. C. Richmond* and *O. T. Toebaas* of Madison, of counsel, and oral argument by *Mr. Toebaas* and *Mr. Richmond*.

*J. W. Carow* of Ladysmith, for the respondent.

Vinje, J.   The conclusions reached by the court as to
the issues and evidence render it necessary to consider only
two of the assignments of error alleged by plaintiff, namely:
(1) Did the court err in admitting testimony of conversa-
tions and discussions by and between the parties in refer-
ence to the sale of the lighting plant prior to the time of
making the written contract? and (2) Did the court err in
affirming the jury's finding that plaintiff was not a holder
in due course because it had actual notice of the contents of
the written contract at the time the notes were bought?   If
these assignments of error are not well taken, then the ques-
tions of whether plaintiff had constructive notice of the con-
tents of the written contract because Pullen was an officer of
both plaintiff and the Frost Engine Company, and whether
there was a valid indorsement of the notes, become imma-
terial.

It is urged that since a written contract of sale was exe-
cuted after the conversations leading up to the sale were had,
parol testimony was inadmissible as to the contents of those
conversations.   This would be so were the terms of the writ-
ten contract sought to be changed by such testimony.   But
that is not the case here.   Two defenses were pleaded.   One
of damages for fraud in inducing the defendant to purchase
the plant, the other for breach of the warranty contained in
the written contract.   There was therefore no effort made to
vary the terms of the written contract by parol.   The court
separately submitted these two defenses to the jury in ques-
tions 1 and 6.   The conversations were competent on the
issue of fraud involved in the first finding.   On such an
issue a wide range of evidence is permissible.

Upon the question of whether Pullen had actual notice of
the contents of the written contract at the time the notes
were purchased the evidence is not consistent.   The notes

were purchased July 13, 1914. On November 27, 1914, Pullen wrote the defendant as follows:

"As per agreement between you and the Frost Engine Company which they left with us at the time we bought the notes against you, there was a payment due on the same November 20th; possibly this has escaped your notice. Trust on receipt of this letter you will send us a draft and greatly oblige."

On the stand Pullen claimed that the statement that the agreement was left at the time the notes were bought was a mistake of his stenographer, but the jury evidently did not believe that. And there was reason for their not so doing aside from the positive statement in the short letter quoted which was signed and no doubt read by Pullen at the time, and that reason is found in the fact that while plaintiff's evidence was that the contract was not delivered to it until about the 23d or 24th of October, one of the notes sued on contains these indorsements:

Indorsement on principal.    Balance due on principal.
   Sept. 21, 1914, $100                    $500
   Oct.  23, 1914,   100                    400

Mr. Frost testified that he received these payments and turned them over to the plaintiff bank. There is nothing in the note to show that the principal could or was to be paid in instalments. Naturally the bank would have made some inquiry into this matter when the first payment was made had it been ignorant of the contents of the contract. But no inquiry seems to have been made. Pullen was president of the plaintiff bank and also a director of the Frost Engine Company. No doubt the jury thought he kept himself informed as to the business of both concerns, and that when he bought the notes for the bank he also received the agreement that went with them, as he says he did in his letter. It is difficult to understand how that definite statement in a letter of a few lines only, and one that involved the subject matter

of the agreement, could have been the result of the mistake of a stenographer. On the whole evidence we are satisfied with the finding of the jury on the question,—especially since it also has the sanction of the trial court.

It is evident that the notes and contract construed together, as they must be (*Thorp v. Mindeman,* 123 Wis. 149, 101 N. W. 417), rendered the notes nonnegotiable under our statute. Sub. (3), sec. 1675—1, Stats., requires a negotiable instrument to be payable "on demand or at a fixed or determinable future time." Under the contract the time of payment of the notes was uncertain and might never occur if the plant failed to earn more than needed for repairs.

*By the Court.*—Judgment affirmed.