F. L. MITCHELL, Appellant, v. THE HEALTH CULTURE COMPANY, a Corporation, BALL SANITARIUM & HEALTH SCHOOL, INC., a Corporation, S. E. BALL and D. B. BRUNER BALL.—162 S. W. (2d) 233.

Division One, April 16, 1942.

Rehearing Denied, June 3, 1942.

*Cross & Cross* and *Moore & Moore* for appellant.

*James H. Hull, Henry E. Sampson, D. F. Bennett* and *C. H. Kohler* for respondents.

478

HAYS, J.—The present appellant filed this action in the Circuit Court of Clay County, Missouri, against two corporations, the Health Culture Company and the Ball Sanitarium & Health School, Inc., and against two individuals, S. E. Ball and D. B. Bruner Ball, in May, 1935. A demurrer to the original petition was overruled and the defendants answered. A change of venue was then taken to the Circuit Court of Clinton County, Missouri, where the defendants again demurred to the petition. The ground of their demurrer was the failure of the plaintiff to attach to his petition the note sued upon or a verified copy thereof. Pending this demurrer the plaintiff amended his petition by interlineation. Thereafter on February 7, 1940, with leave of court, plaintiff filed an amended petition to which another demurrer was filed and sustained. From this last action of the trial court plaintiff has appealed. The first amended petition, which is now before us, is in two counts.

Count 1, after alleging the incorporation of the two corporate defendants, sets out facts which may be summarized as follows: On June 1, 1932, the corporate defendants made and executed their promissory note whereby they promised to pay to the order of the plaintiff, for value received, $5,000 with 6% interest compounded annually. All endorsers on the note waived demand, notice and protest and consented to the extension of time for payment after maturity. The note provided that it was one of a series of seven notes aggregating $25,000 and was due and payable as follows: the makers of the note were to pay into the Excelsior Trust Company of Excelsior Springs, Missouri, 10% of all cash received from their business enterprise at Colfax, Iowa, and Excelsior Springs, Missouri, and 10% of all collections on credit business. The payments at Excelsior Springs were to be made on each banking day and those from Colfax on Tuesday of each week for the preceding week's income. These payments were to be credited by the trustee on the several notes of the series in proportion to their amounts.

The petition proceeds to allege that said note is held by said Excelsior Trust Company under an escrow agreement between the plaintiff and the defendants. Prior to the first day of November, 1932, plaintiff assigned and endorsed said note to one Jessie F. Mitchell and since that day Jessie F. Mitchell reassigned and reendorsed said note to the plaintiff. [There is no further allegation as to the present

ownership of the note and no direct allegation that the note was ever delivered.] It is also alleged that the individual defendants "endorsed said note by placing their signatures thereon before delivery, whereby they became liable as endorsers of said note and waived demand, notice of nonpayment and protest of said note." On or before November 1, 1932, the defendants made several payments on the note to the plaintiff aggregating $507.25.

The above allegations were all contained in substantially the same language in the first count of the original petition. The first count of the amended petition, however, states in addition the following facts: Said note was given in pursuance of a certain written contract of May 24, 1932, between the plaintiff and the defendants which provided for the giving of a promissory note signed by the corporate defendants and endorsed by the individual defendants and which also provided that the plaintiff should not practice as an osteopathic physician within certain limitations. It is stated that the cash income of the corporate defendants has been sufficient to have paid "a large part" of said $25,000 had it been applied for that purpose, but that the defendants had forged their books and records to conceal their true income, and for the purpose of evading the payment of said note the defendants had conveyed a large part or all of the business and assets of the two corporations and had caused them to cease to do business.

It is alleged that a part of the consideration for the note was money then due and owing to the plaintiff in an amount greater than the note; that the makers and endorsers of the note have repudiated all obligation thereon and have caused certain lawsuits for the cancellation of the note to be brought and have introduced in evidence in such litigation forged records of the corporations and perjured testimony.

The prayer of count 1 is for judgment in the sum of $4,492.75, with interest at 6% per annum "as provided by said note." This amount is the difference between the face of the note and the payments alleged.

Count 2 of the amended petition, which is substantially similar to count 2 of the original petition, alleges the following facts: A written contract was entered into between plaintiff and the defendants on March 31, 1932, under the terms of which the plaintiff, for $2,000 cash consideration, sold to the individual defendants certain shares of stock. The defendants agreed to convey to the plaintiff 160 acres of land in Kansas and two airplanes and, in consideration of such contemplated conveyance, plaintiff agreed to cancel his claims against the defendants for past services and also his rights to be paid for future services under a then existing employment contract. He also agreed not to practice his profession of osteopathy at Excelsior Springs, Missouri, or at Colfax, Iowa, and to limit his practice in Kansas City to the field of eye, ear, nose and throat and prostatic diseases.

Full performance of this contract by the plaintiff is alleged and, it is stated, that the defendants failed to perform any of their agreements except that as to the purchase of the stock.

The petition then alleges that by reason of the restrictions placed upon his medical practice he has been damaged in the sum of $15,000; that at the time of making the contract the defendants owed to him $3700, which he released by such contract, and that they would have owed him for the remainder of the year 1932 $7,000, plus $9,000 for the year 1933 and a total of $29,600 for the years 1934, 1935 and 1936. Count 2 prays for judgment in the sum of $64,300.

I. Defendants' demurrer to the first count of the petition raises numerous objections, many of which it will not be necessary to note. Among other grounds the demurrer alleges that said count does not state facts sufficient to constitute a cause of action either as to the corporate or the individual defendants. Defendants contend that the instrument sued upon is a nonnegotiable one and that the individual defendants cannot be held liable as endorsers thereon for this reason. It is clear that the instrument is nonnegotiable. The requirements of negotiability are set forth in Sec. 3017, R. S. Mo. 1939 [Mo. Stat. Ann., sec. 2630, p. 644], which is Sec. 1 of the uniform Negotiable Instruments Law, and are as follows: "An instrument to be negotiable must conform to the following requirements: (1) It must be in writing and signed by the maker or drawer; (2) must contain an unconditional promise or order to pay a sum certain in money; (3) must be payable on demand, or at a fixed or determinable future time; (4) must be payable to order or to bearer; and (5) where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

The instrument here in question was, of course, in writing and apparently was signed by the makers. It called for the payment of a sum certain and was payable to order. However, it did not contain an unconditional promise and was not payable at a fixed or determinable future time. In this connection Sec. 3 of the uniform Negotiable Instruments Law [Sec. 3019, R. S. Mo. 1939, Mo. Stat. Ann., sec. 2632, p. 645] is important. By the last clause of said section it is provided: "But an order or a promise to pay out of a particular fund is not unconditional." The $5,000 called for by the present instrument is undoubtedly payable only out of a particular fund, to-wit: the trust created by allocating a certain proportion of the corporate income of the defendants. Furthermore no definite date of payment is stated. It is payable when, if and as sufficient funds are accumulated in the trust. This might be within a year or within ten years or never. These provisions exclude negotiability. [Bank of Evansville v. Kurth (Wis.), 166 N. W. 658.] However, the second premise of defendants' argument is unsound. One may become liable as an endorser of nonnegotiable paper if he is not the payer or a transferee thereof and endorses the same before delivery. [Powell v. Thomas, 7 Mo. 440, 38

Am. Dec. 465; Lewis v. Harvey, 18 Mo. 74, 59 Am. Dec. 286; Kuntz v. Tempel, 48 Mo. 71; Herrick v. Edwards, 106 Mo. App. 633, 81 S. W. 466.] As these cases were decided before the enactment of the Negotiable Instruments Law, and as that law applies only to negotiable instruments, it does not affect the cited cases, supra.

There is, however, an insuperable obstacle to recovery upon the count as drawn. If the count be construed as a suit directly upon the nonnegotiable promissory note set out therein it is vitally defective because it shows on its face that defendants' promise to pay was conditional and that the condition has not been fulfilled. As stated above the $5,000 was to be paid only out of a special fund and it is alleged that after the payments which were actually credited on the note were made no further allocation of income to the fund was had. Therefore, under the terms of the note, it never became due, and the condition precedent to its payment never occurred.

We think, however, that the pleader has attempted to state a different type of cause of action. In so doing he has attempted to follow the rule laid down in the case of Parker-Washington Co. v. Dennison, 267 Mo. 199, 183 S. W. 1041. That case, which will be noticed in greater detail later, held that under circumstances like the present a party to a contract, who is prevented from recovering upon the contract itself by the wrongful action of the other party thereto in preventing the happening of the conditions precedent mentioned in the contract, has a quasi contractual right against the wrongdoer. If this be the theory upon which the count is drawn, and we think it is, it is vitally defective in that it shows upon its face that plaintiff's cause of action has been barred by limitations under Sec. 1014, R. S. Mo. 1939 [Mo. Stat. Ann., sec. 862, p. 1143.] According to the allegations of the petition the allocation of income to the trust fund apparently stopped in November, 1932, and the wrongful act of the defendants occurred at that time or shortly thereafter. Plaintiff's cause of action then accrued. It is true that the original petition herein was filed in 1935, but the amended petition was not filed until 1940. Where an original petition is merely defective and is made good by amendment, after the running of the limitation period, the statute is held not to apply. [Missouri Pacific R. Co. v. McCarty, 97 Mo. 214, 11 S. W. 52.] Where, however, an amendment introduces into the petition a cause of action entirely new and distinct from that pleaded in the original petition and the amendment is made after the end of the limitation period the new cause will be held to be barred. [Bricken v. Cross, 163 Mo. 449, 64 S. W. 99; Russell v. Nelson, 317 Mo. 148, 295 S. W. 118.] The tests which must be applied to determine whether or not the cause of action stated in the amended petition is a new one are these: (1) whether the same evidence would support both petitions; (2) whether the same measure of damages will apply to both. [State ex rel. Metropolitan St. R. Co. v. Ellison (Mo. Sup.), 224 S. W. 820; Arpe v. Mesker Brothers Iron Co., 323

Mo. 640, 19 S. W. (2d) 668.] In the present case the original count 1 was simply a suit upon a promissory note. Hence all of the evidence necessary under the amended petition in regard to the fraudulent diversion of funds from the trust would have been immaterial and inadmissible. Furthermore the measure of damages under the original petition would have been simply the face of the note plus interest minus payment, while under the amended count it would be the injury sustained by the plaintiff from the wrongful diversion of corporate income which might or might not have equaled the amount recoverable under the original count. The cause of action stated in the amended count is therefore a new and different cause of action from that stated in the original count. Hence the statute of limitations has run upon the same.

II. Turning now to count 2 of the amended petition, it will be seen that it is simply an action on an express written contract. It states the execution of the contract, performance by the plaintiff, and failure to perform by the defendants. It is true that the count contains much matter which is immaterial to this cause, but we are now considering a demurrer and not a motion to strike and this improper matter must be looked upon as surplusage and the count sustained if, after the elimination of surplusage, enough remains to state a cause of action. It is true also that the count prays for damages which plaintiff is certainly not entitled to recover under the facts stated. His only measure of damages is the value of the thing promised to be done by the defendants which they did not do, to-wit: the conveyance of the Kansas land and the two airplanes. But the fact that a petition prays for relief to which the plaintiff under the facts stated is not entitled does not make it demurrable. [Northcraft v. Martin, 28 Mo. 469; Crosby v. Farmers' Bank, 107 Mo. 436, 17 S. W. 1004; Barnett v. Ground, 304 Mo. 593, 263 S. W. 836.]

It is contended by the defendants, however, that the entire petition was demurrable because it contained a cause of action ex delicto joined with another cause of action ex contractu. [Jamison v. Copher, 35 Mo. 483; Sumner v. Rogers, 90 Mo. 324, 2 S. W. 476; The Southworth Co. v. Lamb, 82 Mo. 242.] It is apparent that however imperfectly drawn count number 1 may be, it attempts to state a cause of action under the rule announced in Parker-Washington Co. v. Dennison, 267 Mo. 199, 183 S. W. 1041, supra. In that case the plaintiffs and defendants had entered into a contract for the sale of certain asphalt paving in sufficient amount to pave 40,000 square yards. The asphalt was to be shipped to the defendants at Kansas City where they were to make bids for paving until they were awarded contracts to the extent of 40,000 sq. yds. Plaintiffs were to be paid five cents per sq. yd. for all such paving laid. The defendants, it was claimed, had fraudulently failed to make any bids. The question decided by the court was whether the cause of action was upon the

original written contract and therefore governed by the ten year statute of limitations or whether it was governed by the five year statute. The court said: ''These allegations of the petition would entitle the plaintiffs to recover damages for the nonperformance and breach by the defendants of the terms of their written contract. Such a recovery is justified on elementary principles applicable to redress for breaches of contract. But they do not state a cause of action on a written contract to pay money upon certain conditions which never happened. Their whole legal intendment is to set forth a cause of action for damages for a tortious breach of a contract to do certain things, for the doing of which defendants promised to pay money or property to plaintiffs.'' It is true that the words ''tortious breach'' are used, but it is quite clear that they do not refer to a tort in the ordinary sense of that term. A tort is a violation of a right in rem, a right which the plaintiff has as against all persons with whom he comes into contact. A right which is created by law and not by any act of the parties. The rights of the plaintiffs in the Parker-Washington case, supra, and the right attempted to be asserted in count 1 of this petition are created by the contractual relationship of the parties. While not strictly a contractual right it is a right quasi ex contractu. The rule therefore as to the nonjoinder of contractual and delicto causes of action cannot here apply and we hold that there was no misjoinder of causes of action in the original petition. Since count 2 states a cause of action, although it contains much superfluous matter, the demurrer to that count should have been overruled.

The cause must therefore be reversed and remanded with directions to sustain the demurrer as to count 1 but to overrule the same as to count 2. It is so ordered. All concur.