**Thelma B. BRADLEY, Plaintiff-Respondent,**

v.

**Eddie BUFFINGTON and Mozelle Buffington, Defendants-Appellants.**

**No. KCD 26169.**

Missouri Court of Appeals, Kansas City District.

Oct. 1, 1973.

Scott O. Wright, Brown, Wright & Willbrand, Columbia, for defendants-appellants.

Carl F. Sapp, Sapp, Woods, Dannov & Orr, Columbia, for plaintiff-respondent.

Before DIXON, C. J., and PRIT-CHARD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This is an action for judgment on a note and foreclosure of a chattel mortgage securing the note. The note and chattel mortgage were executed comtemporaneously by Eddie Buffington and Mozelle Buffington (hereinafter referred to as defendants) on March 19, 1964, and ran in favor of ˙A. M. Bradley and Thelma B. Bradley, husband and wife. A. M. Bradley died August 22, 1968, and Thelma B. Bradley (hereinafter referred to as plaintiff) filed this action September 17, 1969.

A. M. Bradley prepared the note and chattel mortgage and submitted both to defendants for execution. The note recited that the principal sum constituted a loan " . . . for the purchase of standing timber and for the operation of the Eddie Buffington Stave Mill . . . ". In her petition, plaintiff alleged "default has been made upon the payment of said note according to its terms and provisions and due demand has been made upon the defendants for the payment of said note." Defendants, during the course of their pleadings, after trial motions and on appeal, have consistently maintained that they were not in default in making payment according to the terms of said note and that no evidence was introduced to prove they were in default. Defendants' position is equivalent to contending that the note had not reached maturity, therefore no legal right to bring this action for judgment on the note and foreclosure of the chattel mortgage existed. Plaintiff, on the other hand, during the course of trial and on appeal, maintained the note was a demand note and demand for payment had been made on January 20, 1966, which was unavailing.

A jury was waived and trial by court ensued on December 22, 1971. On January 12,

1972, judgment in favor of plaintiff was entered in the sum of $18,622.66 (representing $14,000.00 principal plus interest thereon at the rate of five and one-half percent per annum from January 20, 1966); the judgment further provided that the property described in the chattel mortgage be levied against and sold by the sheriff to satisfy the judgment, and that general execution issue in favor of the plaintiff for any deficiency. From this judgment, defendants perfected their appeal.

■ Appellate review of this action is de novo upon the law and the evidence, deferring to the trial court's findings as to controverted factual matters involving the credibility of witnesses, and the judgment of the trial court will not be disturbed unless it is clearly erroneous. Rule 73.01(d), V.A.M.R.; Independence Flying Service, Inc. v. Ailshire, 409 S.W.2d 628 (Mo. 1966); Norman v. Durham, 380 S.W.2d 296 (Mo.1964).

The various contentions of the parties on appeal go begging absent judicial construction of the note and chattel mortgage, thus making it necessary to prescind the note and chattel mortgage before addressing the issues on appeal.

The note, far from being perspicuous, reads as follows:

"PROMISSORY NOTE

$14,000.00     Date     March 19, 1964

As follows after date, we promise to pay to the order of A. M. BRADLEY and THELMA B. BRADLEY, husband and wife, FOURTEEN THOUSAND AND NO/100 .............. DOLLARS

For value received negotiable and payable without defalcation or discount and with interest as hereinbelow set out.

The above money is being loaned for the purchase of standing timber and for the operation of the Eddie Buffington Stave Mill, located in Centralia, Missouri. The makers of this note are to pay 2% of Gross Sales to the holder of this note each 30 days. The holder of this note is to have a Chattel Mortgage on stave mill equipment listed in the Chattel Mortgage.

If for any reason the stave mill is not operating for a period of 120 days, the makers of this note agree to pay the holder of this note 5½% interest on the unpaid principal balance.

Beginning the second year, the makers of this note have the privilege of paying one-fourth back in any calendar year after that time.

The makers of this note do not have the privilege of assigning this note, and any time a sale is made of either the mill or the standing timber to anyone else, this note becomes immediately due and payable.

(s/d) Eddie Buffington
Eddie Buffington
(s/d) Mozelle Buffington
Mozelle Buffington"

The chattel mortgage, separate from the note, but executed contemporaneously with it, specifically referred to the note and relative thereto provided, "And in case default be made in the payment of the debt abovementioned or any part thereof, or of the interest due thereon, on any day when the same ought to be paid, then the whole sum shall at the election of the said A. M. Bradley and Thelma B. Bradley, his wife, become immediately due and payable." Also apropos of this action, the chattel mortgage additionally provided that default in payment of the note constitutes a basis for foreclosure.

■ The Uniform Negotiable Instruments Act, Chapter 401, RSMo 1959, V.A.M.S. bears initially on construction of the note since it was executed March 19, 1964, a date prior to July 1, 1965, the effective date of the Uniform Commercial Code (L. 1963, p. 637, § 10–102). In the context of the Uniform Negotiable Instruments Act, is the note negotiable or non-negotiable? Resolve of this basic question is the genesis for construction of the note. Section 401.001(3) RSMo 1959, V.A.M.S., requires that a note "Must be payable on demand,

or at a fixed or determinable future time;" in order to be negotiable. Section 401.004, subd. 2, RSMo 1959, V.A.M.S., provides, "An instrument payable upon a contingency is not negotiable and the happening of the event does not cure the defect." The note in question recites that it is payable as "hereinafter set out". Next, after a recitation as to the purpose of the loan, the following language appears, "The makers of this note are to pay 2% of Gross Sales to the holder of this note each 30 days". This language standing alone, and even more so when read in conjunction with all other language contained in the note, patently discloses the intent of the parties to be that the principal of the note was payable in installments, the amount of each principal installment mathematically arrived at by calculating 2% of gross sales, if any, generated during successive thirty day periods. The reference to "2% of Gross Sales" is not subject to the construction of constituting the rate of interest to be borne by the principal or designating a particular fund out of which the principal installments are payable. Defendants' "promise to pay", viz, "2% of Gross Sales - - - each 30 days" was neither "payable on demand" nor "at a fixed or determinable future time" as required and defined in Section 401.001(3) RSMo 1959, V.A.M.S. At best, the "promise to pay" was subject to a series of contingencies, 30 day periods during which the stave mill generated gross sales, the occurrence and amounts of which were uncertain, and, therefore, not payable "at a fixed or determinable future time", thus excluding negotiability by virtue of Sections 401.001(3) and 401.004, subd. 2, RSMo 1959, V.A.M.S. Mitchell v. Health Culture Co., 349 Mo. 475, 162 S.W.2d 233 (1942) and Bank of Evansville v. Kurth, 167 Wis. 43, 166 N.W. 658 (1918). Plaintiff contends the note must be construed as a demand note since Section 401.007, subd. 1(2) RSMo 1959, V.A.M.S., provides a note is payable on demand "when no time for payment is expressed". This contention is, at best, specious, and is rejected. The note expressed a time for payment, even though

it was neither "payable on demand" or "at a fixed or determinable future time". Adoption of plaintiff's postulate would nullify the intent of the parties to provide for principal payments in mathematically calculable installments.

Having ruled the note to be a non-negotiable instrument, it is necessary to turn to general rules of construction applicable to contracts to ascertain the additional and encompassing intent of the parties, since the Uniform Negotiable Instruments Act does not apply to or affect the rights or liabilities of parties with respect to non-negotiable instruments. First Nat. Bank of Kansas City v. Produce Exchange Bank of Kansas City, 338 Mo. 91, 89 S.W. 2d 33 (1935). Intent is gleaned from the four corners of the instrument and disclosed by the language used as contradistinguished from any secret intent. Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262 (1940); Bay v. Stout Sign Company, 301 S.W.2d 786 (Mo.1957); Kerrick v. Schoenberg, 328 S.W.2d 595 (Mo.1959); and Monterosso v. St. Louis Globe-Democrat Publishing Co., 368 S.W.2d 481 (Mo. 1963). Four ancillary rules of construction are pertinent: (1) two instruments executed contemporaneously, as part of the same transaction, justify construing both together as if one instrument [Houck v. Frisbee, 66 Mo.App. 16 (1896); Trautman v. Schroeder, 230 Mo.App. 985, 93 S.W.2d 303 (1936); and Slyman v. Simon, 226 Mo.App. 1000, 48 S.W.2d 140 (1932)]; (2) where an instrument is open to two constructions, one making it legal, and the other illegal, the legal construction is preferable [Wiggins Ferry Co. v. Chicago & A. R. Co., 128 Mo. 224, 27 S.W. 568 (1894) and Perbal v. Dazor Manufacturing Corp., 436 S.W.2d 677 (Mo.1968)]; (3) an instrument will not be construed as conferring "a perpetuity of right" or imposing a "perpetuity of obligation" unless such intent is unequivocally expressed in the instrument [Paisley v. Lucas, supra, and James Maccalum Printing Co. v. Graphite Compendius Company, 150 Mo.App. 383,

130 S.W. 836 (1910)]; and (4) any ambiguity in an instrument will be construed more strongly against the party who prepared the instrument [McIntyre v. McIntyre, 377 S.W.2d 421 (Mo.1964); Robson v. United Pacific Ins. Co., 391 S.W.2d 855 (Mo.1965)]. A caveat should be noted with respect to (1), namely, a negotiable promissory note and contemporaneously executed mortgage will not be construed as one instrument where to do so renders the note non-negotiable. Owings v. Mackenzie, 133 Mo. 323, 33 S.W. 802 (1896); Morgan v. Mulcahey, 298 S.W. 242 (Mo.App.1927); and Illinois State Bank of Quincy v. Pedersen, 350 S.W.2d 102 (Mo.App.1961).

█ The judgment rendered disclosed the trial court construed the note as a demand note; additionally, it construed the reference to "2% of Gross Sales" as interest. Rationale has heretofore been delineated as to why the reference to "2% of Gross Sales" should be construed as a provision for payment of the principal of the note in installments, therefore, by necessity, excluding said provision as having any reference to interest. There are two additional compelling reasons why the reference to "2% of Gross Sales" is not interest. One, the percentage bears no relationship whatsoever to the principal amount of the note. Two, although the note is not usurious on its face, plaintiff's conclusion that "2% of Gross Sales" constituted interest would, on the basis of the record, result in a usurious rate of interest when equated with the principal amount of the note (Section 408.070 RSMo 1959, V.A.M.S.), and this illegal result would be compounded as and when the unpaid principal amount was successively reduced.

█ There is no unequivocal intent expressed in either the note or contemporaneously executed chattel mortgage that the makers could defer payment of the principal of the note into perpetuity by simply failing to operate the stave mill; to construe the note as permitting the defendants to defer payment of the principal into perpetuity would create a legal hiatus that was obviously not intended by the parties. Paisley v. Lucas, supra, and James Maccalum Printing Co. v. Graphite Compendius Company, supra. To avoid this obvious legal hiatus, a reasonable construction of the note compels the conclusion that failure of the defendants to operate the stave mill for a reasonable period of time vested plaintiff with an option to accelerate the maturity date of the note. Since failure of the defendants, for any reason, to operate the stave mill for 120 days imposed upon them an obligation to pay "5½% interest on the unpaid principal balance", likewise, failure of the defendants to operate the stave mill for 120 days appears to be "a reasonable period of time" for vesting the plaintiff with an option to accelerate the maturity date of the note.

█ A ratiocinative application of the above rationale and principles impels the following construction of the note insofar as any viable issues on appeal are concerned: (1) the note is a non-negotiable instrument; (2) the note is not a demand note; (3) the principal of the note is payable in installments, the amount of each principal installment mathematically arrived at by determining 2% of the gross sales generated by the Eddie Buffington Stave Mill during successive 30 day periods (starting on the date of said note), with said principal installments due and payable on the 30th day of each 30 day period during which gross sales are generated; (4) the note is non-interest bearing unless the Eddie Buffington Stave Mill fails, for any reason, to operate for a period of 120 days, in which event the "makers of this note agree to pay the holder of this note 5½% interest on the unpaid principal balance"; (5) at the option of the holder the maturity date of the note may be accelerated by (a) failure of the makers to pay any principal installment when due, (b) failure of the makers to pay any interest payment when due, or (c) failure of the makers to operate the Eddie Buffington Stave Mill for a period of 120 days; and

**320**

(6) the maturity date of the note is accelerated by (a) sale of the standing timber by makers to a third party, or (b) sale of the Eddie Buffington Stave Mill by makers to a third party.

Plaintiff in her petition pleaded "that default has been made upon the payment of said note according to its terms and provisions". The aforementioned is tantamount to pleading that the note had become due or reached maturity, and such is an essential allegation in order to state a cause of action in a suit brought upon a note. Spears v. Bond, 79 Mo. 467 (1883). As a corollary, the burden of proof rests upon a plaintiff regarding all allegations required to state a cause of action. Felker v. Metropolitan Life Insurance Company, 288 S.W.2d 26 (Mo.App.1956); Milliken v. Trianon Hotel Company, 364 S.W.2d 71 (Mo.App.1962).

In view of the construction of the note hereinabove set forth, it was incumbent upon plaintiff to prove that there were amounts representing 2% of gross sales of the Eddie Buffington Stave Mill during a particular 30 day period that were not paid by defendants to plaintiff and her husband, while he was alive, or to plaintiff after her husband's demise, or that defendants failed to operate the stave mill for a period of 120 days, which would constitute a basis for vesting plaintiff with an option to accelerate the due date or maturity of said note. The record is silent in both respects. Moreover, there was no evidence whatsoever that the standing timber or stave mill had been sold.

The referred to evidentiary void in the record did not occur as the result of a ploy on plaintiff's part to secure any trial advantage, but, rather, from an erroneous, but honest, belief that the note was a demand note. Plaintiff should be given the opportunity to adequately and fully develop the evidence, if there be any, regarding the void mentioned.

Construction of the note, coupled with plaintiff's failure to carry the burden of proof imposed upon her, being dispositive of the appeal, it is unnecessary to consider other points raised by the defendants.

In the light of the foregoing construction given the note, the judgment rendered by the trial court can not stand. The judgment is reversed and the cause is remanded for a new trial consistent with construction of the note as set forth in this opinion.

All concur.